IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JERRY MARTIN, JR.<br><br>    Plaintiff,<br><br>v.<br><br>SUSAN HUTSON, SHERIFF, ORLEANS PARISH<br><br>    Defendant. | CIVIL NO. 2:23-cv-5113 |

# COMPLAINT

Plaintiff Jerry Martin, Jr. asserts his causes of action against defendant Susan Hutson, the Sheriff of Orleans Parish, in both her official and individual capacities, as follows:

## THE PARTIES

1. Plaintiff is Jerry Martin, Jr. He is 42 years old. He is a Louisiana citizen and resides in Covington.

2. Defendant is Susan Hutson, the Sheriff of Orleans Parish, in both her official and individual capacities. Hutson is a Louisiana citizen and resides in New Orleans.

## JURISDICTION AND VENUE

3. The Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question), the Fourteenth Amendment of the United States Constitution through 42 U.S.C. § 1983, and 42 U.S.C. § 1981 through Section 1983.

4. The Court has personal jurisdiction over Hutson because she is a Louisiana citizen and was present in Louisiana at the time this lawsuit was filed.

5.     Venue for Martin's claims is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Hutson resides in this this judicial district (specifically, Orleans Parish).

6.     Alternatively, venue for Martin's claims is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of Hutson's unlawful acts giving rise to this lawsuit, as well as Martin's resulting injuries and damages, occurred within this judicial district (specifically, Orleans and St. Tammany Parishes).

**FACTS**

7.     Former Orleans Parish Sheriff Charles Foti hired Jerry Martin as an employee and deputy sheriff in 2002.

8.     Throughout his entire employment Martin was objectively qualified for his job. Martin performed his duties with excellence and was promoted to the rank of Captain.

9.     Susan Hutson was elected the Orleans Parish Sheriff in 2021.  She assumed office on July 1, 2022.

10.    In her capacity as Sheriff, Hutson is the final decision-maker, appointing authority, and policymaker for the Office of the Orleans Parish Sheriff.

11.    At the time Hutson assumed office, Martin was assigned as a "Unit Manager" of the Orleans Justice Center.

12.    Martin continued to perform his duties with excellence.

13.    Hutson utilized a progressive disciplinary policy for her employees.

14.    On September 7, 2022, Hutson, either directly or through her Chief of Staff,

Jon Williams, instructed Assistant Sheriff Kristen Morales to terminate Martin's employment.

15. On September 7, 2022, Morales sent deputies to Martin's home to terminate him. These deputies told Martin they did not know the reason for his termination. Neither Hutson, Williams, Morales, nor anyone else ever told Martin he had the right to appeal his termination or for a name-clearing hearing.

16. Hutson had adopted a disciplinary policy or custom that afforded Martin the right to a disciplinary board hearing prior to termination. Hutson violated her own policy or custom and fired Martin without prior notice or the opportunity to be heard by herself or her disciplinary board. Neither Hutson nor her staff ever told Martin he had access to any special name-clearing procedures before or after his termination.

17. Later, also on September 7, 2022, Hutson issued a press release to public news media concerning the termination of several OPSO employees, including Martin. Hutson also posted the press release to her official OPSO website. A copy of the press release is attached as **Exhibit A** and incorporated into this complaint. The press release is still posted and accessible at the OPSO website today.[1]

18. In her press release, Hutson said Martin was terminated "for cause." Hutson suggested Martin was terminated because he was untrained, incompetent, and unsafe. Both statements are false and defamatory. Martin was not terminated for any cause. Martin is well-trained in his position, competent, and safe.

---

[1] The press release may be accessed at:
https://www.opso.us/index.php?option=com_content&view=article&id=761:sheriff-susan-hutson-announces-departure-of-part-time-head-of-training-division-4-unit-managers&catid=146:media-releases&Itemid=885 (last accessed September 6, 2023).

3

19. After Hutson defamed Martin, neither she nor her staff ever told Martin he had any access to any special name-clearing procedures after his termination. If Hutson had done so, Martin would have demanded a name-clearing hearing.

20. Nevertheless, even if Martin had demanded a name-clearing hearing, Hutson would have refused his request because she intentionally and maliciously sought to defame him. In support of this allegation, plaintiff further alleges:

- A few days after Hutson fired Martin and several of his colleagues, she met with one of her senior-most advisors about the firings. The advisor told Hutson she should provide Martin and his colleagues a hearing and opportunity to clear their names. Hutson said she would not do so.

21. Hutson knew her defamatory statements were false. Hutson defamed Martin in the public media to cover up the real reason she fired Martin. Hutson fired Martin because she is biased against men, generally, and against Black men, specifically. Martin is a Black man. In turn, Hutson favors women over men, and White men over Black men. Hutson fired Martin because he is a Black man. Hutson would not have fired Martin if he were a woman. Hutson would not have fired Martin if he were a White man. In support of this allegation, plaintiff further alleges:

- Martin was qualified for his job as Captain and Unit Manager.

- Martin is a Black man.

- Hutson says she fired Martin for "cause" and suggested he was untrained, incompetent, and unsafe, but these allegations are false. In truth, Hutson did not fire Martin for cause. At least one of Hutson's senior-most advisors has

confirmed Hutson, in fact, did not fire Martin for any cause whatsoever.

- Regarding sex, Hutson replaced Martin with a woman, Cpt. Trenica Steele. Martin and Steele are similarly situated for purposes of the comparator analysis. Martin was better qualified than Cpt. Steele for the position of Unit Manager. Hutson also, frequently, told at least one of her senior advisors that she was going to "promote these women" who currently served at the Orleans Justice Center, suggesting that she intended to replace the Black men who currently held leadership positions with women because of their sex. On the same day she fired Martin, Hutson also fired another Black man who served as a Captain and Unit Manager at OJC: Danny Henry. Henry was also qualified for his position. Plaintiff alleges Hutson likewise fired Henry because he is a Black man. Hutson replaced Henry with a woman, Maj. Djuana Bierra. Plaintiff alleges Henry and his replacement are similarly situated for purposes of the comparator analysis. Plaintiff alleges Henry gave no cause for his termination or replacement.

- Regarding race, on the same day she fired Martin, Hutson also fired another Black man who served as a Captain and Unit Manager at OJC: Mark Jones. Jones was also qualified for his position. Plaintiff alleges Hutson likewise fired Jones because he is a Black man. Hutson replaced Jones with a less qualified White person, Lt. Anthony Fricano. Plaintiff alleges Jones and his replacement are similarly situated for purposes of the comparator analysis. Plaintiff alleges Jones gave no cause for his termination or replacement.

- Plaintiff alleges Hutson demonstrated a pattern of terminating qualified Black men without cause and replacing them with women and White men because of race and sex-based bias.

- Hutson frequently told her advisors she "distrusted" many of her employees who held leadership positions within the OJC. But Hutson only directed those comments against employees at OJC who were Black men, and never towards her employees at OJC who were women or White men. Hutson never provided any reason for her distrust. Plaintiff alleges Hutson distrusted her Black, male employees because of her race and sex-based bias.

22. Hutson's defamatory statements about Martin stigmatized him in both the general community and the Louisiana law enforcement community, and this stigma combined with the denial of any name-clearing hearing caused other law enforcement employers to reject Martin's applications for employment.

23. In the Louisiana law enforcement community, law enforcement officers who, like Martin, are allegedly terminated "for cause" are often blackballed from future Sheriff and or police work.

24. Martin applied for a job as a deputy sheriff with the St. Tammany Parish Sheriff's Office. Martin was rejected for the job because of Hutson's defamatory statements and denial of a name-clearing hearing. St. Tammany Sheriff Randy Smith would have hired Martin but-for the fact Hutson falsely told news media Martin was terminated for cause, suggested he was untrained, incompetent, and unsafe, and denied him a name-clearing hearing.

6

25. Martin's ability to find employment with other law enforcement agencies continues to be limited or foreclosed because of Hutson's defamation and refusal to provide him with a name-clearing hearing.

## CAUSES OF ACTION

**Count 1:** **Due Process Violation under the Fourteenth Amendment against Sheriff Hutson in Her Official Capacity**

26. Jerry Martin states a cause of action for deprivation of his liberty interest without due process under the Fourteenth Amendment of the United States Constitution, through 42 U.S.C. § 1983, against Sheriff Hutson in her official capacity based on the following adverse employment actions:

   (a) Hutson's termination of Martin's employment on September 7, 2022;

   (b) Hutson's intentional and malicious publication to news media, on September 7, 2022, of the false and defamatory charges against Martin that he was terminated for cause and because he was untrained, incompetent, and unsafe.

   (c) Hutson's disregard of her own disciplinary procedures and refusal to inform Martin he had access to a special name-clearing procedure; and,

   (d) Huston's refusal to provide Martin with any name-clearing hearing even if he had known to demand one.

27. A public employee is entitled to a name-clearing hearing when the "employee is discharged in a manner that creates a false and defamatory impression about him and thus stigmatizes him and forecloses him from other employment opportunities." *White v. Thomas*, 660 F.2d 680, 684 (5th Cir. 1981).

28. 42 U.S.C. § 1983 is the proper vehicle to assert violations of rights guaranteed under the Fourteenth Amendment against a "person" acting under color of state law. *See Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 119–20 (1992) (so holding). To establish a claim for violation of federal rights through Section 1983, a plaintiff must show "(1) a deprivation of a right secured by federal law, (2) that occurred under color of state law, and (3) was caused by a state actor." *Givs v. City of Eunice*, 512 F.Supp.2d 522, 542 (W.D. La. 2007), *aff'd* 268 Fed. Appx. 305 (5th Cir. 2008). A municipal employer, like a Louisiana sheriff, is subject to liability under Section 1983 upon proof of "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) *citing Monell v. Dep't. of Social Services*, 436 U.S. 658, 694 (1978).

29. Plaintiff reincorporates here all the factual and legal allegations of his complaint.

30. Hutson knowingly and maliciously fired Martin for false and defamatory reasons; Hutson publicized those false charges to public news media; Hutson disregarded her own disciplinary procedures and refused to provide Martin with a hearing before terminating him for cause; Hutson failed to inform Martin he had access to a name-clearing hearing; Hutson would have refused to grant Martin a hearing even if he had asked; and Hutson's defamation combined with the denial of a name-clearing hearing did stigmatize Martin's ability to find re-employment and continues to stigmatize him today.

31. Accordingly, Hutson, in her official capacity as Martin's employer, owes Martin all damages arising from her defamation and the denial of a name-clearing hearing, including his lost wages, general damages, economic damages, attorney's fees, litigation costs, judicial interest, and all other legal and equitable relief to which he is entitled. In addition to all other damages and relief, Hutson, in her official capacity, owes Martin a public name-clearing hearing.

**Count 2:   Due Process Violation under the Fourteenth Amendment against Sheriff Hutson in Her Individual Capacity**

32. Jerry Martin states a cause of action for deprivation of his liberty interest without due process under the Fourteenth Amendment of the United States Constitution, through 42 U.S.C. § 1983, against Sheriff Hutson in her individual capacity based on the following adverse employment actions:

   (a) Hutson's termination of Martin's employment on September 7, 2022;

   (b) Hutson's intentional and malicious publication to news media, on September 7, 2022, of the false and defamatory charges against Martin that he was terminated for cause and because he was untrained, incompetent, and unsafe.

   (c) Hutson's disregard of her own disciplinary procedures and refusal to inform Martin he had access to a special name-clearing procedure; and,

   (d) Huston's refusal to provide Martin with any name-clearing hearing even if he had known to demand one.

33. Although a public employee's liberty-interest claim under the Fourteenth amendment ordinarily lies against the public employer, *Sims v. City of Madisonville*,

9

894 F.3d 632, 642-43 (5th Cir. 2018), an employee may recover punitive damages against the individual decision-maker who defamed him and denied him a name-clearing hearing upon proof the individual acted "maliciously." *In re Selcraig*, 705 F.2d 789, 797 (5th Cir. 1983) (so holding).

34. Plaintiff reincorporates here all the factual and legal allegations of his complaint.

35. Hutson was the chief policymaker and decision-maker for all employment decisions regarding her subordinate employees. Hutson falsely told news media she terminated Martin for "cause" and suggested he was untrained, incompetent, and unsafe. Hutson knew the charges were false but publicized them anyway. Hutson violated her own disciplinary policy and refused to give Martin a hearing before his termination for cause. Hutson failed to tell Martin he had access to any name-clearing procedures after she defamed him. Hutson would have denied him a hearing even if he had asked because she purposefully defamed him to cover up her real reasons for terminating him, her bias against him because of his race and sex.

36. Hutson took these adverse actions against Martin maliciously and with reckless disregard for his Constitutionally protected rights.

37. Accordingly, Hutson, in her individual capacity, owes Martin all damages arising from her defamation and the denial of a name-clearing hearing, including punitive damages, Martin's lost wages, general damages, economic damages, attorney's fees, litigation costs, judicial interest, and all other legal and equitable relief to which he is entitled.

**Count 3:    Disparate-treatment Discrimination Because of Race under 42 U.S.C. § 1981 against Sheriff Hutson in Her Official Capacity**

38.  Jerry Martin states a cause of action for disparate-treatment discrimination because of his race under 42 U.S.C. § 1981, through 42 U.S.C. § 1983, against Sheriff Hutson in her official capacity based on the following adverse employment actions:

(a)  Hutson's termination of Martin's employment because of his race on September 7, 2022.

39.  42 U.S.C. § 1981 forbids terminating a person's employment because of his race.  *See LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 (5th Cir. 1996).  A "claim for damages against a state actor for violation of rights contained in § 1981 must be redressed pursuant to the explicit remedial provisions of § 1983."  *Felton v. Polles*, 315 F.3d 470, 482 (5th Cir. 2002).  A municipal employer, like a Louisiana sheriff, is subject to liability under Section 1983 upon proof of "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom."  *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) *citing Monell v. Dep't. of Social Services*, 436 U.S. 658, 694 (1978).

40.  Plaintiff reincorporates here all the factual and legal allegations of his complaint.

41.  Susan Hutson is the final policymaker and decision-maker for all employment and termination decisions affecting her subordinate employees.  Hutson fired Martin.  She fired him because he is Black.  Hutson would not have fired Martin if he were White.  Martin was qualified for his job.  Hutson had no cause to terminate him.  Hutson frequently told her advisors she distrusted her employees assigned to the

OJC, but those comments were always directed towards Black men and never towards women or White men. On the same day Hutson fired Martin, she also terminated another qualified and similarly situated Black man, Mark Jones, without cause, and replaced him with a White man. Hutson's policymaking and decision-making in this regard was the moving force of Martin's illegal termination.

42. Accordingly, Hutson, in her official capacity as Martin's employer, owes Martin all damages arising from his illegal termination, including his lost back wages, lost future wages or reinstatement, general damages, economic damages, attorney's fees, litigation costs, judicial interest, and all other legal and equitable relief to which he is entitled.

**Count 4: Disparate-treatment Discrimination Because of Race under 42 U.S.C. § 1981 against Sheriff Hutson in Her Individual Capacity**

43. Jerry Martin states a cause of action for disparate-treatment discrimination because of his race under 42 U.S.C. § 1981, through 42 U.S.C. § 1983, against Sheriff Hutson in her individual capacity based on the following adverse employment actions:

    (a) Hutson's termination of Martin's employment because of his race on September 7, 2022.

44. A public employer's decision-maker is liable for a violation of Section 1981 through Section 1983 upon proof she intentionally discriminated against the public-employee plaintiff. *Johnson v. Chapel Hill Indep. Sch. Dist.*, 853 F.2d 375, 381 (5th Cir. 1988). An individual defendant is liable for punitive damages upon proof she acted maliciously. *In re Selcraig*, 705 F.2d 789, 797 (5th Cir. 1983) (so holding).

45. Plaintiff reincorporates here all the factual and legal allegations of his complaint.

46. Sheriff Hutson terminated Martin. She did so because of his race. She acted maliciously and with reckless disregard to Martin's federally protected rights. Accordingly, Hutson, in her individual capacity, owes Martin all damages arising from his illegal termination, including punitive damages, Martin's lost back wages, lost future wages or reinstatement, general damages, economic damages, attorney's fees, litigation costs, judicial interest, and all other legal and equitable relief to which he is entitled.

**Count 5:   Disparate-treatment Discrimination Because of Sex under the Fourteenth Amendment against Sheriff Hutson in Her Official Capacity**

47. Jerry Martin states a cause of action for disparate-treatment discrimination because of his sex under the Fourteenth Amendment of the United States Constitution, through 42 U.S.C. § 1983, against Sheriff Hutson in her official capacity based on the following adverse employment actions:

   (a) Hutson's termination of Martin's employment because of his sex on September 7, 2022.

48. "Sex discrimination . . . in public employment violate[s] the Equal Protection Clause of the Fourteenth Amendment." *Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 550 (5th Cir. 1997). A cause of action for deprivation of Fourteenth Amendment rights by a state actor must be brought pursuant to Section 1983. *Hearth, Inc. v. Dep't of Pub. Welfare*, 617 F.2d 381, 382 (5th Cir. 1980). A municipal

employer, like a Louisiana sheriff, is subject to liability under Section 1983 upon proof of "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) *citing Monell v. Dep't. of Social Services*, 436 U.S. 658, 694 (1978).

49. Plaintiff reincorporates here all the factual and legal allegations of his complaint.

50. Susan Hutson is the final policymaker and decision-maker for all employment and termination decisions affecting her subordinate employees. Hutson fired Martin. She fired him because he is a man. Hutson would not have fired Martin if he were a woman. Martin was qualified for his job. Hutson had no cause to terminate him. She replaced Martin with a less qualified woman. Hutson frequently told her close advisors she intended to promote women to leadership positions in the OJC, suggesting she was doing so because of their sex, which necessarily meant replacing the current Black men who, like Martin, occupied those leadership positions. On the same day she terminated Martin, Hutson also terminated another similarly situated Black man who was a Captain and Unit Manager at the OJC, Danny Henry, without apparent cause, and Hutson replaced Henry with a woman or reassigned his duties to a woman. Hutson's policymaking and decision-making in this regard was the moving force of Martin's illegal termination.

51. Accordingly, Hutson, in her official capacity as Martin's employer, owes Martin all damages arising from his illegal termination, including his lost back wages, lost future wages or reinstatement, general damages, economic damages, attorney's fees,

litigation costs, judicial interest, and all other legal and equitable relief to which he is entitled.

**Count 6: Disparate-treatment Discrimination Because of Sex under the Fourteenth Amendment against Sheriff Hutson in Her Individual Capacity**

52. Jerry Martin states a cause of action for disparate-treatment discrimination because of his sex under the Fourteenth Amendment, through 42 U.S.C. § 1983, against Sheriff Hutson in her individual capacity based on the following adverse employment actions:

   (a) Hutson's termination of Martin's employment because of his sex on September 7, 2022.

53. A public employer's decision-maker is liable for a violation of the Fourteenth Amendment through Section 1983 upon proof she intentionally discriminated against the public-employee plaintiff. An individual defendant is liable for punitive damages upon proof she acted maliciously. *In re Selcraig*, 705 F.2d 789, 797 (5th Cir. 1983) (so holding).

54. Plaintiff reincorporates here all the factual and legal allegations of his complaint.

55. Sheriff Hutson terminated Martin. She did so because of his sex. She acted maliciously and with reckless disregard to Martin's federally protected rights. Accordingly, Hutson, in her individual capacity, owes Martin all damages arising from his illegal termination, including punitive damages, Martin's lost back wages, lost future wages or reinstatement, general damages, economic damages, attorney's

fees, litigation costs, judicial interest, and all other legal and equitable relief to which he is entitled.

## JURY DEMAND

Jerry Martin requests a trial by jury on all issues and causes of action.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Jerry Martin prays that this complaint be deemed good and sufficient; that it and summons be served upon defendant Susan Hutson; and, after due proceedings are had, that judgment be entered in favor of plaintiff and against defendant:

1. Entering declaratory judgment in favor of Martin and against Hutson in both her official and individual capacities, declaring that the practices complained of in this complaint are unlawful under federal law, and Hutson did willfully, maliciously, or recklessly as the case may be violate the rights of Martin as alleged and proven.

2. Under the Fourteenth Amendment (liberty interest) through 42 U.S.C. § 1983, awarding Martin all damages and equitable relief due against Hutson in both her official and individual capacities, including but not limited to Martin's lost wages, general damages, economic damages, punitive damages (solely against Hutson in her individual capacity), reasonable attorney's fees and costs, judicial interest, and compensation for any negative tax consequences because of a favorable judgment. In addition to these damages, Martin is entitled to injunctive relief ordering Hutson, in her official capacity, to provide Martin with a name-clearing hearing.

3. Under 42 U.S.C. § 1981 through 42 U.S.C. § 1983, awarding Martin all damages and equitable relief due against Hutson in both her official and individual capacities, including but not limited to Martin's lost back wages, lost front wages or reinstatement, general damages, economic damages, punitive damages (solely against Hutson in her individual capacity), reasonable attorney's fees and costs, judicial interest, and

16

      compensation for any negative tax consequences because of a favorable judgment.

4. Under the Fourteenth Amendment (sex discrimination) through 42 U.S.C. § 1983, awarding Martin all damages and equitable relief due against Hutson in both her official and individual capacities, including but not limited to Martin's lost back wages, lost front wages or reinstatement, general damages, economic damages, punitive damages (solely against Hutson in her individual capacity), reasonable attorney's fees and costs, judicial interest, and compensation for any negative tax consequences because of a favorable judgment.

5. Awarding Martin all other legal or equitable relief to which he is entitled against Hutson in both her official and individual capacities.

      Respectfully submitted:

      /s/ Kevin S. Vogeltanz
      Kevin S. Vogeltanz, TA (Bar #32746)
      The Law Office of Kevin S. Vogeltanz, LLC
      823 Carroll Street, Suite A / Mandeville, LA 70448
      Telephone: (504) 275-5149
      Facsimile: (504) 910-1704
      Email: vogeltanz@gmail.com

      *Attorney for Jerry Martin*

**CLERK: Please hold summons pending waiver of service of summons**



Wednesday, Sep 06, 2023   🔒 EMPLOYEE LOGIN   Text Size ⊖ ⊕



Home | About | Department | Visitation | Inmate Information | Docket Master | Civil Division | Community | Media | Contact Us

# Sheriff Susan Hutson announces departure of part-time head of training division; 4 unit managers

| Print |



**FOR IMMEDIATE RELEASE**

**Sheriff Susan Hutson announces departure of part-time head of training division; 4 unit managers**

NEW ORLEANS – September 7, 2022 - Sheriff Susan Hutson today announced that Major Robert Donnelly is stepping down as director of the OPSO Training Division, a post he held on a part-time basis for the past two years. Major Donnelly has a combined total of 36 years of service at the Sheriff's Office.

No replacement for Major Donnelly has been named, but Sheriff Huston said she is seeking a full-time director for the training division.

In addition to Major Donnelly, Sheriff Hutson is terminating employment for four unit managers for cause. Two of the unit managers, Capt. Jerry Martin and Capt. Mark Jones, worked at the Orleans Justice Center. A third unit manager, Capt. Cathy Taylor, work at the Temporary Mental Health Unit, and a fourth unit manager; Capt. Danny Henry, was assigned to the Intake and Processing Center.

Sheriff Hutson said, "We are making a strategic realignment of certain positions to ensure that we have well-trained correctional officers who also have an opportunity to advance their careers here at the Sheriff's Office."

###

About | Docket Master | Inmate Query | Civil Division | Back to Top

**Protecting and Serving the Parish of Orleans**

Copyright © 2022 Orleans Parish Sheriff's Office | Sheriff Susan Hutson. All Rights Reserved. Developed by Orleans Parish Sheriff's Office

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JERRY MARTIN, JR. <br><br> Plaintiff, <br><br> v. <br><br> SUSAN HUTSON, SHERIFF, ORLEANS PARISH <br><br> Defendant. | CIVIL NO. |

### **DECLARATION OF JERRY MARTIN, JR.**

I, Jerry Martin, Jr., am 42 years old, and declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following facts and true and correct to the best of my knowledge and recollection:

1. I am the named plaintiff in the lawsuit *Jerry Martin, Jr. v. Susan Hutson, Sheriff, Orleans Parish*, soon to be filed in the United States District Court for the Eastern District of Louisiana.

2. After reviewing the entire document, I authorized and instructed my attorney, Kevin S. Vogeltanz, to file the original Complaint in this matter and to assert all of the causes of action included therein.

3. I verify that, at the time of its filing, each of the factual allegations of the Complaint was true and correct to the best of my knowledge and recollection.

Executed by me on  9/6/2023

DocuSigned by:
E065072C0FE64C3...
Jerry Martin, Jr.